UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:13-cv-00090-GCM

| JONATHAN HENSLEE, | ) | **TRIAL BRIEF** |
| --- | --- | --- |
| | ) | **BY DEFENDANT SINGLETON** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FNU SINGLETON, | ) | |
| | ) | |
| Defendant. | ) | |

NOW COMES Defendant Singleton, through the undersigned counsel, and provides his trial brief in advance of the scheduled March 27, 2017, jury trial in this matter:

## STATEMENT OF THE CASE

In short summary[1]:

Plaintiff-inmate Henslee ("Henslee") filed the Complaint in this matter on March 25, 2013. [D.E. #1] In the Complaint, he alleges, pursuant to 42 U.S.C. § 1983, that he had been subjected to an excessive use of force related to the use of oleoresin capsicum ("OC" or "pepper") spray at Avery-Mitchell Correctional Institution ("AMCI") on October 27, 2012, by Defendant Officer Marty Singleton. (*Id*.). Henslee demands a jury trial and requests $15,000 in compensatory damages, $60,000 in punitive damages, costs, and attorneys fees.[2]

The parties engaged in discovery and, on January 21, 2015, Defendant Singleton moved

---

[1] In the interests of brevity and pursuant to Fed. R. Civ. P. 10(c), Defendant Singleton adopts and incorporates, as if fully set forth herein, the "Statement of the Case" set forth by this Court in its August 18, 2015, Order denying summary judgment in this matter. [D.E. #83]

[2] Henslee's Complaint also demands injunctive relief to seize video footage of the alleged incident. However, the footage requested by Henslee does not exist and this Court has denied Henslee's motions compelling the same. [D.E. #54, 56, 58]

for summary judgement [D.E. #68] On April 21, 2015, the Court ordered the parties to submit additional briefing related to the use of OC spray. [D.E. #75] On August 18, 2015, the Court denied Defendant Singleton's motion for summary judgment. [D.E. #83] Thereafter, Henslee was appointed counsel [D.E. #86] and the case has proceeded to trial [D.E. #89].[3]

## STATEMENT OF FACTS

Henslee's Contentions:

On October 27, 2012, Henslee was engaged in a fight with another inmate. [D.E. #1, p. 4] After the fight, he was handcuffed and facing the wall of the B-side hallway of the Watauga Unit at AMCI when Singleton pepper sprayed him in the face and head when he did not pose a danger to himself or anyone else. (*Id*.). Henslee did not lunge at Defendant Singleton, but admits using profanity when directed to answer questions by Singleton. [D.E. #79-1, p. 50] Henslee's eyes and scalp burned for approximately three days after the spray. (*Id*.).

Defendant Singleton's Evidence:

Defendant Singleton's ("Singleton") evidence will show that Henslee is an inmate convicted of a multiple violent felonies and was housed at AMCI in the fall of 2012. Singleton is a veteran Correctional Officer, having approximately fourteen years of experience with North Carolina Department of Public Safety ("NCDPS"). Singleton regularly works on the 2B night shift. On October 27, 2012, he was working the same shift and in the same position.

On October 27, 2012, at approximately 6:51 p.m., Singleton was working on the floor of

---

[3] The undersigned counsel has conferred with Defendant Singleton and NCDPS regarding the possibility of settlement in this matter and they have declined to make a settlement offer to Plaintiff, instead expressing a desire to proceed to jury trial.

the B-block of the B-wing of the Watauga Unit.[4] While there, Singleton heard a radio call from Officer Mathes ("Mathes"), who was working in the unit control booth, that there was a disturbance (an inmate fight) on the A-block. Singleton was assigned to patrol both the A- and B-blocks so he immediately left the B-block and went into the A-block to stop the fight. When he got into the A-block, Henslee and Inmate Burris ("Burris") were no longer fighting. Mathes positively identified the two as those who had been fighting by verbal confirmation and gesturing from the control booth. Singleton observed that Henslee and Burris appeared as if they had been fighting - looking agitated, sweaty, and disheveled.

Officer Stafford ("Stafford") had been working in the A-wing when the fight broke out, but he responded to the B-wing in order to assist with the disturbance. The Sergeant on duty told Singleton and Stafford, by radio, to handcuff the inmates. Singleton ordered Burris to submit to handcuffs and he complied. When Stafford arrived, he ordered Henslee into the "core area" and Henslee complied.[5] Singleton ordered Burris to the "A and B officers' station" and he complied.[6]

Singleton could see that Henslee was not complying with Stafford's orders to submit to handcuffs and was acting belligerently. Singleton left Burris under the supervision of Officer Silver (who had also responded to the area) and went to the core area to assist Stafford. Stafford

---

[4] Housing units at AMCI are mainly divided into individual buildings with both an A- and a B-wing and each wing has four housing "blocks" named A through D. In each block, there are approximately 32 inmate cells with a large dayroom, showers, and telephones. The blocks are separated by a large concrete wall and have separate entrances, but share a common control booth and 2 sally port areas. Usually there are four officers working each wing, with two officers working the "floor" of two housing blocks.

[5] The core area is a hallway just outside of the housing unit.

[6] The station is a standing desk just outside of the housing unit and you can see into the core area through a glass window and door dividing the spaces.

3

was relatively new and Singleton could see that he appeared to need some assistance bringing Henslee under control (i.e. getting him to submit to the handcuffs).

Singleton heard Stafford give Henslee three orders to turn around and submit to handcuffs. Singleton observed Henslee not comply with those orders. Singleton saw that Henslee had a handcuff on his left wrist, but would not give Stafford his right wrist to apply the second handcuff. Stafford was holding the right handcuff in his left hand and was trying to hold onto Henslee's right hand with his right. Henslee was pulling his hand away in attempts to free it and was attempting to turn around and face Stafford. Henslee refused to allow his right hand to be handcuffed. Officers are taught that inmates can use the single handcuff as a weapon by swinging it around. Thus, having an inmate with only one handcuff on and refusing to allow the second handcuff to be applied presents officers with a dangerous and escalating situation. Singleton and Stafford were both aware of these circumstances and escalating danger. Stafford felt that Henslee could broken free from his hold at any time and attacked either Singleton or himself.

Singleton ordered Henslee to submit his right hand for the application of the handcuffs. Henslee refused. Henslee then turned towards Singleton, lunged at him, and stated: "Spray me motherfucker and I'll have your job." Henslee lunged at Singleton a second time and, at that time, Singleton deployed a single burst of O.C. spray to Henslee's facial area, in compliance with DPS policy. Henslee then turned away from Singleton and submitted his right hand to Stafford to apply handcuffs.

Stafford applied the handcuff and Henslee was escorted to the segregation unit where he was allowed to decontaminate (shower), change his clothes and shoes, was evaluated by nursing staff, and was photographed. Nurse Penland evaluated Henslee and observed that Henslee was

4

without any distress, injury, or trauma. Photographs of Henslee were taken, documenting his *lack* of injury. The same process was done for inmate Burris.

The use of force was investigated by Robin Hudgins and reported through the chain of command to the facility Administrator, Mike Ball. Frances Reel was one step in the approval process and determined the use of force to be necessary and appropriate. Ball also determined that Singleton and Stafford took appropriate measures to stop the inmate fight, secure both inmates, and prevent further assaults from occurring, and did so in compliance with DPS policies and procedures. Ball will testify that the application of O.C. spray was an appropriate response to Henslee's behavior and continued refusal of orders to submit to handcuffs. Hudgins will further testify that Henslee pled guilty to disciplinary charges related to the incident.

## EVIDENTIARY ISSUES

1) **Henslee's testimony should be limited pursuant to FRE 602, 701, and 702.**

2) **Henslee's proposed witnesses testimony should also be limited pursuant to FRE 602, 701, and 702.**

3) **Any evidence related to personnel disciplinary action or incidents and investigations not related to the October 27, 2012, use of force at issue in this case should be forbidden pursuant to FRE 401, 403, and 404.**

4) **Any testimony or evidence related to an alleged video in this matter is prejudicial to Singleton and is irrelevant to his claims of excessive force and should be excluded pursuant to FRE 401 and 403.**

In support of the arguments set forth above, Singleton incorporates by reference the arguments made in his Motion in Limine and Memorandum in Support which is filed contemporaneously herewith. Singleton respectfully requests that this Court limit Henslee's presentation of evidence pursuant to Federal Rules of Evidence ("FRE") 401, 403, 404, 602, 701,

and 702 and limit the cross-examination of Singleton's proposed witnesses by Henslee pursuant FRE 401, 403, and 404..

## LEGAL ISSUES

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42,48 (1988); *see Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" and protects prisoners from the "unnecessary and wanton infliction of pain[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component--that the harm inflicted was sufficiently serious--and a subjective component--that the prison official acted with a sufficiently culpable state of mind. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). What an inmate must establish respecting each component "varies according to the nature of the alleged constitutional violation." *Id.*

**I.    Plaintiff cannot demonstrate that his constitutional rights were violated by Defendant Singleton's use of force against him on October 27, 2017.**

To determine whether a prison official used excessive force against an inmate, the core judicial inquiry focuses on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 1178 (2010). In determining whether prison officials have acted maliciously and sadistically, a court should balance: (i) "the need for the application of force," (ii) "the relationship between the need and the amount of force that was used," (iii) the threat reasonably

6

Case 1:13-cv-00090-GCM   Document 95   Filed 02/27/17   Page 6 of 12

perceived by the responsible officials, and (iv) "any efforts made to temper the severity of a forceful response." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)) (internal quotation marks omitted).

Not every malevolent touch by a prison guard, later determined in the calm of a judge's chambers to be gratuitous, gives rise to a federal cause of action. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Johnson*, 481 F.2d at 1033). "[B]ecause not [] every malevolent touch by a prison guard gives rise to a federal cause of action, a *de minimis* application of force will not result in a constitutional violation." *Hill v. O'Brien*, 387 Fed. Appx 396, 398-399 (4th Cir. 2010) (internal citations and quotations omitted). The Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10.

"The extent of injury suffered by the inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Wilkins*, 559 U.S. at 37. Prison officials are charged with balancing competing governmental interests that include the maintenance of order; protection of correctional officers, prison staff and other inmates; and inmates' rights to be free from cruel and unusual punishment. *Whitley*, 475 U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. *Hudson*, 503 U.S. at 6. *See also Langham v. United States*, EDNC Case No. 5:14-ct-03143-BO, D.E. #54 (Jan. 28, 2016), *aff'd* 2016 U.S. App. LEXIS 20209 (4th Cir. Nov. 9, 2016); *Allen v. Lark*, 2015 U.S. Dist. LEXIS 122455 (D. Md. Sept. 15, 2015).

Here, Singleton's evidence will show that Henslee created a dangerous and hostile environment when he engaged in a fight with Burris, refused multiple orders to submit to handcuffs, attempted to turn to face Stafford, lunged at Singleton, and then threatened him. Singleton and his witnesses will testify regarding the danger associated with both inmate fights and partially secured inmates. They will also testify further regarding the appropriate use of O.C. spray. Lastly, they will all testify that Singleton's actions on October 27, 2012, were necessary and appropriate means of gaining Henslee's compliance with Singleton's lawful orders. The application of force to Henslee was minimal and done in a good faith effort to maintain order.

A jury will easily conclude that there was a need for the application of force perceived by Singleton and that the his application of force was not excessive, nor was it malicious or sadistic. Singleton denies that Henslee was restrained and compliant throughout the incident and his testimony will be supported by Stafford's account of the incident. Singleton further denies that he administered an excessive amount of O.C. spray to Plaintiff. Again, this will be corroborated by Stafford. Lastly, Nurse Penland will refute Henslee's claims of injury. Singleton's supervisors will testify that a routine investigation of the use of force concluded that the use of force on Henslee on October 27, 2012, was minimal, necessary, and justified. Singleton's response to the threat posed by Henslee, coupled with his refusal of orders, verbal and physical threats, was reasonable and authorized to secure Henslee and provide for his own safety as well as the safety of Henslee, other staff, and other inmates. In short, there is no evidence to support a finding that Singleton violated Henslee's constitutional rights on October 27, 2012.

**II.      Defendant Singleton is entitled to qualified immunity against Plaintiff's claims.**

The doctrine of qualified immunity "balances two important interests--the need to hold

Case 1:13-cv-00090-GCM   Document 95   Filed 02/27/17   Page 8 of 12

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009). The doctrine of qualified immunity acts to shield law enforcement officers from civil liability for "bad guesses in gray areas" and thus ensures that the officers will only be liable for violating clear bright-line rules. *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011). Qualified immunity "operates to ensure that before they are subject to suit, officers are on notice that their conduct is unlawful." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013) (quoting *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)) (internal quotation marks omitted). A prison official sued for a constitutional violation does not lose qualified immunity merely because the conduct at issue might have violated some prison administrative regulation. *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

A right is "clearly established" where the contours of that right are sufficiently clear so that a reasonable officer would understand that what he is doing violates that right. *Wilson v. Layne*, 526 U.S. 603, 615 (1999). Qualified immunity's fundamental purpose is intended to give "government officials breathing room to make reasonable but mistaken judgments" and protect "all but the plainly incompetent or those who knowingly violate the law" from the costs of suit. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted). Thus, even if a plaintiff demonstrates a constitutional violation, an official is nonetheless entitled to qualified immunity if a reasonable person in the official's position "could have failed to appreciate that his conduct would violate those rights." *Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013) (citation omitted).

9

In analyzing the issue of qualified immunity, the court must "identify the specific right that the plaintiff asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level of particularity." *Winfield*, 106 F.3d at 530. Defining the applicable right in an abstract way "is inappropriate." *Id.* at 531. If there is any legitimate question as to whether an officer's conduct amounts to an abridgement of a constitutional right, the officer is entitled to qualified immunity. *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994). Here, the Court should examine: (1) whether the facts demonstrate that Singleton violated Plaintiff's constitutional rights; and (2) if so, whether a reasonable person in Singleton's position would have known that his conduct would violate that right. *Id*.

Simply put, Henslee's evidence will fail to demonstrate any constitutional violation and Singleton's evidence will demonstrate that he was acting well within the boundaries of reasonableness. Henslee cannot demonstrate that the use of O.C. spray against him in order to gain his compliance with restraining him (i.e. applying handcuffs) after his fight with another inmate and continued refusal of orders is a constitutional violation. Moreover, a reasonable officer in Singleton's position would not have understood that using lawful restraint and control techniques such as application of O.C. spray to an inmate in order to gain his compliance, after his refusal of orders and threatening behavior, violated that inmate's constitutional rights. Thus, qualified immunity shields Singleton from claims against him in his individual capacity for monetary damages.

## CONCLUSION

In sum, Henslee cannot demonstrate a constitutional violation occurred on October 27, 2012. And, Singleton's conduct is well within what is reasonable for officers in his position and

10

entitles him to qualified immunity against Plaintiff's claims.

Respectfully submitted this 27th day of February, 2017.

        JOSH STEIN
        Attorney General

        /s/ Kimberly D. Grande
        Kimberly D. Grande
        Assistant Attorney General
        N.C. State Bar No. 40708
        N.C. Department of Justice
        P.O. Box 629
        Raleigh, North Carolina 27602
        Phone: (919) 716-6500
        Fax: (919) 716-6761
        kgrande@ncdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the **TRIAL BRIEF BY DEFENDANT SINGLETON** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Joshua Lanning and Kimberly Cochran
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
*Attorneys for Plaintiff*

This the 27th day of February, 2017.

/s/ Kimberly D. Grande
Kimberly D. Grande
Assistant Attorney General
N.C. State Bar No. 40708
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27601-0629
Telephone: (919) 716-6500
Facsimile: (919) 716-6761
E-mail: kgrande@ncdoj.gov

12

Case 1:13-cv-00090-GCM   Document 95   Filed 02/27/17   Page 12 of 12